W. H. BLALOCK v. H. Q. STRAIN.

(Decided March 15, 1898).

*Action of Claim and Delivery—Chattel Mortgage— Agreement between Mortgagor and Mortgagee for Substitution of other Property for Property Mortgaged —Conditional Sale—Notice—Registration.*

1. An agreement between a mortgagor and a mortgagee for the substitution of other property for that conveyed in the mortgage, while good as between the parties and enforcible in equity, is not a mortgage so as to give a lien in preference to creditors and purchasers for value. *Semble*, that in the absence of an agreement between the mortgagor and mortgagee the latter may follow and subject property for which the mortgaged property has been exchanged before third parties have acquired rights therein.

2. Where registration of an instrument is required, no notice, however full and formal, will supply the place of registration.

3. Where A, as mortgagee of personal property, agreed that the mortgagor might exchange the mortgaged property for other property which should stand as security in place of the former, and the mortgagor executed to B a mortgage upon the property so received in exchange; *Held,*, that the mortgage to B is superior to that of A, although B had notice of the agreement between A and his mortgagor.

4. In such case, even if the mortgagor had acted as the agent of the mortgagee in the prior mortgage in making the exchange, the agreement that the property received in exchange should stand in the place of that described in the mortgage, made it a conditional sale and invalidated it as to creditors and purchasers for value notwithstanding they had notice of the agreement.

ACTION of claim and delivery, tried before *Adams, J.*, and a jury at August Term, 1897, of ORANGE Superior Court. There was a verdict for the defendant and from the judgment thereon the plaintiff appealed. The facts appear in the opinion.

*Mr. C. D. Turner*, for plaintiff (appellant).
*Messrs. J. W. Graham* and *S. M. Gattis*, for defendant.

CLARK, J.: The defendant Strain, in 1884, executed a mortgage on two horses to Burch which was registered. Subsequently in 1888 Burch gave Strain the following paper writing: "This is to certify that I. A. P. Burch, grant H. Q. Strain the privilege to exchange one bay mare and one bay horse (which I, A. P. Burch, hold a mortgage on) for two black mules, which shall stand in the place of the above mentioned horses as security. Aug. 4, 1888. A. P. Burch, (Seal)." This was not registered. Thereafter in 1890 Strain executed a mortgage on these two black mules to the plaintiff and the mortgage was duly registered.

This action was brought to recover the mules in order to sell them and apply proceeds to the debt secured by plaintiff's mortgage. Burch interpleaded and claimed them under his mortgage on the horse and mare and his agreement with the mortgagor, above set out, that the mules received in exchange for the horse and mare should be substituted in their stead. There was a con-

flict of evidence whether the plaintiff had notice of this agreement between Burch and Strain and his Honor told the jury that, if the plaintiff knew of this agreement between Burch and Strain when he took the mortgage on the mules, the claim of Burch was superior to his, and that the agreement need not have been registered, but that if he took the mules without notice of such agreement then the plaintiff's claim was superior. The plaintiff excepted and this raises the point which is decisive of the case.

The agreement between the mortgagor and mortgagee was good as between themselves and enforcible in equity, but it was not a mortgage. Parties can not thus, by side agreements between themselves, substitute from time to time other property for that described in the mortgage and claim a lien on it in preference to "creditors and purchasers for value." *Code*, Section 1254. To do this would be to destroy the whole purpose and tenor of our registration laws and restore the evils they were enacted to prevent. *Sharpe* v. *Pearce*, 74 N. C., 600; *Powers* v. *Freeman*, 2 Lans (N. Y.) 127; 1 Cobbey Chat. Mort., Section 158. It is true that in *Sharpe* v. *Pearce, supra*, it was held that the agreement for substitution was invalid as to third persons without notice. The defendant there bought without notice and it was not necessary to decide, and it was not decided, what would have been the effect if he had bought such substituted property with notice. But our Courts have repeatedly held that where registration is required "no notice however full and formal will supply the place of registration." *Quinnerly* v. *Quinnerly*, 114 N. C., 145; *Bank* v. *M'f'g. Co.*, 96 N. C., 298; *Todd* v. *Outlaw*, 79 N. C., 235; *Blevins* v. *Barker*, 75 N. C., 436; *Robinson* v. *Willoughby*, 70 N. C., 358; *Fleming*

v. *Burgin*, 37 N. C., 584; *Barber* v. *Wadsworth*, 115 N.
C., 29.   If this were not so, a piano could be named in
a mortgage and a subsequent purchaser or mortgagee
from such mortgagor of a pair of mules, or any other
property, would be liable to have it taken from him by
proof of an agreement between the mortgagor and
mortgagee for the substitution of the mules for the
piano, and would be dependent upon the uncertainties
of oral testimony as to whether or not he had know-
ledge of such agreement.   This would destroy, as we
have said, the very object and the efficacy of our regis-
tration laws.   His Honor was correct in saying that it
was immaterial that the agreement for the substitution
was not registered.   Not being a new mortgage, the
constructive notice from registration, if any, would not
have added to its validity, though essential to a mort-
gage.

The case of *Hubbard* v. *Winborne*, 20 N. C., 137,
relied on by the defendant's counsel, has no bearing.
There, a debtor conveyed a horse and other property to
a trustee to pay certain debts, the property being left
in the hands of the trustor until the day of sale.   Soon
after the registration of the deed, the debtor exchanged
the horse for a mare and the trustee accepted the sub-
stitution.   The Court held that the trustee, having
power to sell or exchange the trust property, could con-
stitute the debtor his agent for that purpose and having
ratified his action and received the mare before the levy
of an execution against the debtor, the title had passed
to the trustee.   This may be true as between a trustor
and his trustee, for no lien was acquired as to the sub-
stituted property before title passed to the trustee, but
the doctrine does not apply as to mortgagor and mort-
gagee, between whom the relation of mortgagee is not

that of one entrusted with the property to apply it for the benefit of the mortgagor. On the contrary, the mortgagor is in possession and, except for the purposes of the security for debt, is the real owner of the property with right to sell it or mortgage it free from any encumbrances not on record. Acts of 1829, Chapter 20, now *Code*, Section 1254. Whether, if directly brought into question, *Hubbard* v. *Winborne, supra*, could be now sustained, in view of the numerous later decisions above cited as to the registration law passed in 1829, which was then new and had not been construed, it is very certain it is not authority as to the relation between mortgagor and mortgagee, and it was so held in *Sharpe* v. *Pearce, supra*.

The learned counsel for the defendant ingeniously argued, further, that, in the exchange of the horse and mare for the two mules by the permission of the mortgagee Burch, the mortgagor Strain was acting as agent for Burch who thus in fact became the purchaser and received the title. If we concede that this was so, Strain took possession of them and the agreement provides that they should "stand in place of the horses as security"—that is, that Strain should have a clear title to them (as he would have had to the horses) upon payment of the mortgage debt. This made it a conditional sale and invalid as to creditors and purchasers for a valuable consideration without registration; *The Code*, Section 1275, which places such sales on the same basis as mortgages and hence "no notice however full or formal would supply the want of registration." *Brem* v. *McDowell*, 93 N. C., 191; *Clark* v. *Hill*, 117 N. C., 11; *Bostic* v. *Young*, 116 N. C., 766; *Glasscock* v. *Hazell*, 109 N. C., 145; *Kornegay* v. *Kornegay*, Ibid, 188; *Har-*

*rell* v. *Godwin*, 102 N. C., 330; *Butts* v. *Screws*, 95 N. C., 215.

We have already said that as between the parties (if rights of third persons had not intervened) the mortgagee by virtue of his agreement could compel the application of the property received in exchange for the mortgaged property to his debt, and it may be, though we need not pass upon the question, that, if without a mortgagee's consent, other property, is received in exchange for the mortgaged property he might follow up and subject the fund or substituted property before third parties have acquired any rights in respect thereto.

Error.