# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

## ON APPEAL FROM THE COURT OF CHANCERY, AND THE PREROGATIVE COURT.

### MARCH TERM, 1907.

———————

RUDOLPH HEROLD, appellant,

*v.*

COLUMBIA INVESTMENT AND REAL ESTATE COMPANY et al., respondents.

[Argued March 26th, 1907.   Decided July 8th, 1907.]

1. An owner who divides his lands into lots and streets as shown by a map filed by him with the county clerk, and who sells lots as shown thereon, does not, in the absence of a neighborhood scheme calling for the erection of but one building on a single lot, impliedly covenants not to sell the lands except in the parcels delineated on the map, but he may subdivide the lots into smaller parcels and sell them in such parcels or devote any part of the same to public uses, as streets, parks, &c.

2. An owner who divides his lands into lots and streets as shown by a map filed by him and who sells lots as shown thereon impliedly covenants with his grantees that they shall have a right of passage over

such streets as an appurtenant to the premises granted to them; and such grantees may enjoin a change in the location of or a narrowing of the width of the streets, without first showing that the same will result in depreciation of the value of the lot purchased.

On appeal from a decree in chancery advised by Vice-Chancellor Stevenson.

*Messrs. Weller & Lichtenstein,* for the appellant.

*Messrs. Carrick & Wortendyke,* for the respondents.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The case made by the pleadings and supported by the proofs is as follows:

The defendant, the Ridgefield Land Company, was, in the year 1898, the owner of a tract of land in the county of Bergen, which it had laid out into certain lots and streets delineated upon a map of the property, which was prepared under its direction, and filed by it in the office of the clerk of the county. On the 2d of December of that year it sold to Herold, the complainant, two of the lots shown on its map, namely, lots 10 and 12 in block G. Lot 10 fronts on a street designated upon the map as Summit avenue. Lot 12 adjoins lot 10 and is located upon the corner of Summit avenue and a street designated on the map as Prospect avenue. This latter avenue is laid out on a curve, one portion of it running at right angles to Summit avenue, and another part of it running parallel to that avenue, and forms the boundary for the northerly and the easterly sides of block G.

In the year 1905 the complainant began the erection of a dwelling-house upon his two lots, the contract price for which was about $15,000.

In the meantime the Ridgefield Land Company, after selling a large part of its lots, either singly or in parcels, had disposed of the remainder of its holdings in bulk to one Flood, who in turn conveyed the same, on the 8th of April, 1904, to a corporation known as the Industrial Savings and Loan Company.

On the 26th of September, 1904, this company filed in the office of the clerk of Bergen county another map of the whole tract, upon which many of the lots delineated upon the original map under which the complainant purchased his property, are divided into smaller parcels. In addition an alteration is made in the location and character of certain of the streets shown on the original map, and particularly of Prospect avenue, which is altered by extending the portion which forms the northerly boundary of block G in a straight line to a public highway known as Palisade avenue, and the easterly boundary of the original tract; and, further, by narrowing from fifty to forty feet that portion of the avenue which bounds block G on the east and by renaming it Rothwell avenue.

Subsequent to the filing of this second map the legal title was passed out of the Industrial Savings and Loan Company, but the beneficial interest in the property still remains in it, the legal title being held by a trustee for its benefit. The defendant, the Columbia Investment and Real Estate Company, as the agent of the Industrial Savings and Loan Company in charge of the tract, is engaged in selling lots as delineated on the second map, and in altering Prospect avenue so as to conform to the lines and locations shown on that map.

The complainant insists that these changes from the plan exhibited by the original map, if carried into effect, will materially interfere with his enjoyment of his building; the reduction in size of the lots, by causing the erection thereon of buildings of small size and little value, and the alteration of Prospect avenue by changing it into a thoroughfare, the user of which will entirely destroy the quiet of his residence. He further insists that the changes referred to will also largely depreciate the value of his property. For these reasons he seeks, by his bill, to restrain the defendants from altering the location or width of Prospect avenue, or of any of the other streets or avenues delineated on the original map, and from selling any of the land contained in the tract, except by the lots as shown upon that map.

The complainant also seeks to restrain the defendants from violating a so-called "Neighborhood scheme," which he alleges was put in force by the Ridgefield Land Company, and became

operative throughout the whole tract delineated upon its map, and by the provisions of which but one building was permitted to be erected upon a single lot, and was required to be located a given distance from the front, rear and side lines thereof.

At the hearing of the case in the court of chancery the bill of complaint was dismissed upon the ground that the complainant's remedy, if he had one, was legal and not equitable. From the decree of dismissal this appeal is taken.

The proofs in the case fail to show the existence of any such neighborhood scheme as is alleged in the bill. It is, therefore, unnecessary for us to consider the question whether the purchaser of a number of lots, all of which have had impressed upon them a general scheme, restricting the number and location of buildings to be erected thereon, has a remedy in equity against the vendor to restrain him from selling other of his lots free from such restrictions. The failure to show the existence of such scheme is also fatal to the claim of the complainant that he is entitled to restrain the Ridgefield Land Company, and its successors in title, from selling its lands except in parcels delineated upon the original map. No such covenant is implied by the making of such a map and the sale of certain lots shown thereon, and the right of the owner to dispose of the unsold portion of his lots, singly or in bulk, or by subdividing them into smaller parcels, and selling them in such parcels, is complete. Not only may he sell the lands in such parcels as he may see fit, but he is under no obligation to his vendees to retain the unsold portion in private ownership. He may, if he sees fit, devote any part of it to public uses, either as streets, parks or in other modes of a general nature calculated to give additional value to the rest of the tract. The refusal of the court of chancery to issue its injunction, either to compel the carrying into effect of the alleged neighborhood scheme or to restrain the sale of the lands embraced in the original map in lots smaller in area than those shown thereon, was, therefore, justified.

But the attempt of the defendants to alter the location and narrow the width of certain of the streets delineated on the original map is clearly an infringement of the rights of the complainant, and for the protection of such rights he is entitled to the

aid of a court of equity. In the case of *Lennig* 'v. *Ocean City Association, 41 N. J. Eq. (14 Stew.) 606,* this court held that whenever the owner of a tract of land lays it out into blocks and lots upon a map, and on that map designates certain portions of the land to be used as streets, and then conveys those lots by reference to the map, he becomes bound to the grantees not to use the portion so devoted to the common advantage otherwise than in the manner indicated; that the grantees are regarded as purchasers, by implied covenant, of the right to use the streets as a means of passage to and from their premises, as appurtenant to the premises granted; that this private right is wholly distinct from, and independent of, the right of passage to be acquired by the public, and declared that "the object of the principle is not to create public rights, but to secure to persons purchasing lots under such circumstances those benefits, the promise of which, it is reasonable to infer, has induced them to buy portions of a tract laid out on the plan indicated." We further held that the threatened violation, by the grantor or his assigns, of this implied covenant in the deed entitled the grantee to relief in equity by way of injunction.

This decision is controlling both upon the question of the property right of the complainant and of his right to equitable relief. It is true that in the cited case it was shown that the threatened invasion of the complainant's right, if carried out, would greatly depreciate the value of the property purchased by him, and that in the present case the complainant has not made it clear that a like result will follow from the threatened change in the location and width of the streets shown on the original map filed by the Ridgefield Land Company. But this fact does not disentitle him to equitable relief. The threatened injury is, in its nature, a continuing one. If the defendants are permitted to retake into their exclusive possession any part of these streets, and then to sell such portions to purchasers by a reference to the second map, not only will the complainant necessarily become involved in numerous lawsuits with such purchasers, if he attempts to enforce his rights in such land, but the outcome of such litigation it is difficult to foresee. Moreover, the remedy at law is plainly inadequate. If the defendants and their grantees should persist in

retaining to their exclusive use the land withdrawn from public streets, notwithstanding the recovery of damages against them in actions at law, the complainant would be finally driven to a court of equity in order to be restored to his legal right. It is not equitable that he should be compelled to embark in a series of expensive litigations before being granted relief by injunction for the protection of his rights.

The decree appealed from should be reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, GARRISON, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, VREDENBURGH, VROOM, GREEN, GRAY, DILL—12.