ALAN TURNER AND GREENSBORO COLLEGE ALUMNÆ ASSOCIATION, INC., v. MRS. MINNIE H. GLENN; J. V. FULTON AND WIFE, KATE KELLY FULTON; LAURA P. HODGIN AND HUSBAND, S. A. HODGIN; PURVIS H. BEESON; C. R. WHARTON; L. C. PENRY AND WIFE, MARTHA J. PENRY; AND A. K. MOORE, RECEIVER OF A. K. MOORE REALTY COMPANY.

(Filed 7 January, 1942.)

1. Deeds § 16—

The fact that the use of property contiguous to a residential subdivision has changed from residential to business purposes does not affect the enforceability of restrictive covenants within the subdivision.

2. Registration § 2—

No notice, however full and formal, will take the place of registration.

3. Deeds § 16: Frauds, Statute of, § 9—

The servitude imposed by restrictive covenants is a species of incorporeal right constituting an interest in land within the purview of the statute of frauds, and a restrictive covenant may not rest in parol.

4. Deeds § 16: Registration § 1—

Restrictive covenants must be registered in order to be binding upon subsequent purchasers, and therefore advertisements published in local papers tending to show a general scheme of development of a subdivision are incompetent to establish restrictive covenants.

**5. Deeds § 16: Frauds, Statute of, § 9—**

Since restrictive covenants may not rest in parol, oral statements by officers of the corporate owner of a subdivision tending to show a general scheme of development are incompetent to establish restrictive covenants.

**6. Deeds § 16: Registration § 2—**

Reference in a deed to a map of the subdivision incorporates such a map for a more particular description, but does not bind the owner to sell lots therein in accordance with the scheme of development laid down on the map, and therefore such reference is ineffective as notice to subsequent purchasers that the land is subject to restrictive covenants and does not impose such restrictions upon land purchased by them.

**7. Registration § 2—**

A purchaser is charged with notice of the contents of every recorded instrument constituting a link in his chain of title and is put on notice of any fact or circumstance affecting his title which any of such instruments would reasonably disclose.

**8. Same—**

A subsequent purchaser is chargeable with notice of restrictive covenants only if a deed constituting a link in his chain of title sets them forth or refers to a recorded instrument which sufficiently describes them, but he is not required to investigate collateral conveyances of any of his predecessors in title. However, in the instant case investigation of collateral conveyances would have failed to give notice of covenants restricting the use of lots in the vicinity to residential purposes.

**9. Deeds § 16: Registration § 2—Reference in deed to "usual restrictions" held insufficient to impose restrictions to use for residential purposes.**

Plaintiffs severally acquired titles to lots in a subdivision by purchase at foreclosure of deeds of trust executed by the developer of the property. The deeds of trust respectively stipulated that the lot embraced therein was subject to "customary restrictions" and "usual restrictions" imposed by the developer in conveyances in that section of the subdivision. There was no other reference in any deed constituting a link in plaintiffs' respective chains of title to restrictive covenants. *Held:* The references are insufficient to give notice of restrictive covenants limiting the use of the property to residential purposes, and plaintiffs acquired title free from any restrictions.

**10. Same—In instant case, investigation of collateral conveyances of developer would not have given notice of restrictive covenants.**

Instruments in plaintiffs' respective chains of title stipulated that the lot conveyed was subject to usual or customary restrictions placed by the developer on property similarly situated in the subdivision. *Held:* Even if plaintiffs were charged with notice of restrictive covenants in collateral conveyances by the developer, in the instant case investigation of such collateral conveyances would not give reasonable notice of covenants restricting the use of the property to residential purposes, since owners of lots adjacent to plaintiffs' lots had purchased at foreclosure of a purchase money deed of trust executed by the developer which contained no restrictions, and their lots had been zoned by the municipality for business purposes and were then in use for such purposes.

**11. Deeds § 16: Estoppel § 9—**

An officer and salesman of the corporate developer of a subdivision who is without authority to make conveyance, with or without restrictive covenants and who later individually acquires a lot in the subdivision free from restrictive covenants, is not estopped to deny the existence of such restrictions as to his lot as against owners of other lots in the subdivision whose deeds contain no stipulation binding the developer to insert like restrictions in deeds to other property in the subdivision.

CLARKSON, J., dissents.

SEAWELL, J., concurring in result.

APPEAL by plaintiffs from *Pless, Jr., J.,* at April Civil Term, 1941, of GUILFORD. Reversed.

This action was instituted by plaintiffs to obtain a decree that plaintiffs own certain property in the subdivision known as Sunset Hills in Greensboro free and clear of any restrictive covenants and to remove the cloud upon their title to such property caused by the claims of other property owners within the subdivision that such restrictions exist. The defendants, answering, deny the material allegations of the complaint and allege, by way of cross action, that Sunset Hills was developed under a general uniform plan or scheme under which restrictive covenants were imposed upon all of the lots within the subdivision and praying that plaintiffs be required by order of court to observe and abide by such restrictive covenants uniformly adopted under said plan. They further allege that the plaintiff Turner, by his conduct and representations as an officer and sales agent of the original corporate owner, is estopped to assert the absence of restrictive covenants.

In 1924 A. K. Moore Realty Company purchased a tract of unimproved land containing 214 acres, located in the western part of Greensboro, for the purpose of development and sale. It laid out streets, sidewalks and public parks and subdivided the land into 596 lots. Some of the streets and sidewalks were paved and water, sewer and gas mains were installed. The development was divided into five sections. A map thereof showing all 5 sections and indicating the location of streets, the size and number of the lots and like information was prepared. This map was recorded 29 March, 1926. Later, maps of each of the several 5 sections were prepared and such sectional maps were recorded in the office of the register of deeds of Guilford County in 1935. The subdivision was known and designated as Sunset Hills.

Plaintiff Turner owns Lots Nos. 4 and 5 in Block 1, Section 1, and plaintiff Greensboro College Alumnæ Association, Inc., owns Lot No. 6 in said block and section. These lots face on Madison Avenue and are located near the easterly bounds of said subdivision nearest Greensboro. The defendants severally own lots in said development adjacent to or in the vicinity of the lots owned by plaintiff. They are made parties

defendant individually and as a class representing all other property owners in said subdivision holding deeds containing restrictive covenants.

The Realty Company sold and conveyed a large number of the lots within the development "subject to certain restrictions as to the use thereof, running with said land by whomsoever owned until May 1st., 1949; said restrictions, which are expressly assented to by the purchaser in accepting this deed, being as follows, to-wit :" The restrictions which follow are 10 in number and relate to the location of the residences upon the property, the kind and. type of building that may be erected, the minimum cost thereof, and the like, including a restriction against alienation to persons of Negro descent and limiting the use of property to residential purposes.

The Realty Company executed a purchase money mortgage on said tract of land. Said mortgage was foreclosed and all lots which had not theretofore been released were sold free of any restrictive covenant. These lots, approximately 100 in number, are scattered throughout the development.

In 1929 said company executed a trust deed conveying a number of lots in said subdivision. This trust deed was foreclosed and the lots therein conveyed were sold free of restriction. These include Lot No. 10 in Block 3, Section 1, diagonally across Madison Avenue from the property of plaintiffs. This lot is now being used for business purposes, the building being erected in 1935. It also included Lot No. 20, Block 2, Section 1, directly across Aycock Street from Lot No. 4 owned by plaintiff Turner. This lot is now owned by defendant Wharton.

In 1930 said company executed a trust deed conveying 17 lots as security for an indebtedness. This trust deed, which included no restrictive covenants, was foreclosed and the property was conveyed without restriction. The lots thus conveyed included Lot No. 7, Block 1, Section 1, adjoining the lot owned by plaintiff Alumnæ Association. This lot was acquired by *mesne* conveyances by one Beeson in 1934 and he has erected a business structure thereon.

In 1927 said company executed a trust deed on Lot No. 4, Block 1, Section 1. This trust deed was foreclosed and said lot was purchased by plaintiff Turner in 1936. The trust deed and the deed to Turner contained the following : "The above described property is conveyed subject to all outstanding and unpaid taxes and assessments and subject also to the usual restrictions of the use and reservations placed by A. K. Moore Realty Company on property similarly situated in Sunset Hills."

In 1927 said company also executed a mortgage on Lot No. 5, Block 1, Section 1. This mortgage was likewise foreclosed and said lot was purchased by plaintiff Turner in 1936. The deed of trust and the deed to Turner contained the following : "Subject to customary restrictions of

the use and reservations reserved by A. K. Moore Realty Company in the conveyances of lots fronting Madison Avenue in Block 1, Section 1, Sunset Hills."

In 1927 said company likewise executed a mortgage on Lot No. 6, Block 1, Section 1. This mortgage was foreclosed and the lot was purchased by plaintiff Alumnæ Association in 1935. The deed of trust and the deed to the Alumnæ Association contained the same stipulation which was incorporated in the deed to Lot No. 5.

When the cause came on to be heard in the court below issues were submitted to and answered by the jury in favor of defendants. The first issue was as to whether Sunset Hills was developed pursuant to a general plan under which restrictive conveyances were inserted in deeds to purchasers. The second issue and the answer thereto was as follows:

"2. If so, were the lots of the plaintiffs described in the complaint made subject to restrictive covenants by A. K. Moore Realty Company?

"Answer: Yes."

The jury further found that no substantial radical and fundamental changes have taken place in the subdivision which would render the lots in the immediate neighborhood unsuitable for residential purposes and that plaintiff Turner is estopped to assert a right to the unrestricted use of said lots.

From judgment on the verdict plaintiffs appealed.

*Hoyle & Hoyle and Frazier & Frazier for plaintiffs, appellants.*
*C. R. Wharton and Andrew Joyner, Jr., for defendants, appellees.*

BARNHILL, J. Plaintiffs' contention that there have been radical changes in the immediate neighborhood such as would render their property unsuitable for residential purposes by reason of the development of a subdivision north of and across the street from their property as a business settlement is answered adversely to them by *Brenizer v. Stephens, ante,* 395. The court properly excluded any evidence in respect thereto.

Whether restrictive covenants were inserted in deeds executed by the land company for lots located within the subdivision as a part of a general scheme and for the benefit of all is seriously debated. This question might give us serious concern were it necessary to decide the same. However, on this record, we may confine our consideration to the decision of one question: Are the lots owned by plaintiffs located in Sunset Hills subject to restrictive covenants which prohibit their use for business purposes? This question must be answered in the negative.

The Connor Act, C. S., 3309, is firmly imbedded in our law. Its wisdom has clearly demonstrated itself in the certainty and security of titles in this State which the public has enjoyed since its enactment. It

is necessary in the progress of society, under modern conditions, that there be one place where purchasers may look and find the status of title to land.   Hence, in applying this act it has become axiomatic with us that "no notice, however full and formal, will take the place of registration."   *Austin v. Staten*, 126 N. C., 783; *Fertilizer Co. v. Lane*, 173 N. C., 184, 91 S. E., 953; *Wood v. Lewey*, 153 N. C., 401, 69 S. E., 268; *Harris v. Lumber Co.*, 147 N. C., 631; *Blalock v. Strain*, 122 N. C., 283; *Buchanan v. Clark*, 164 N. C., 56, 80 S. E., 424; *Blacknall v. Hancock*, 182 N. C., 369, 109 S. E., 72; *Davis v. Robinson*, 189 N. C., 589, 127 S. E., 697; *Lanier v. Lumber Co.*, 177 N. C., 200, 98 S. E., 593; *McClure v. Crow*, 196 N. C., 657, 146 S. E., 713; *Smith v. Turnage-Winslow Co.*, 212 N. C., 310, 193 S. E., 685.

The servitude imposed by restrictive covenants is a species of incorporeal right.   It restrains the owner of the servient estate from making certain use of his property.   It is an interest in land, conveyance of which is within the statute of frauds.   Such restraint may not be effectively imposed except by deed or other writing duly registered.   *Davis v. Robinson, supra; Hall v. Misenheimer*, 137 N. C., 183; *Drake v. Howell*, 133 N. C., 162.

Where land is laid out in lots, some of which were conveyed by deeds containing uniform restrictions, the grantor agreeing orally as a part of the consideration for the purchases to impose a similar restriction in each subsequent deed made for the remaining lots, such oral agreement constitutes a contract for the sale of an interest in land, and is not enforceable in equity in the absence of some note or memorandum thereof signed by the party to be charged.   *Sprague v. Kimball*, 213 Mass., 380, 100 N. E., 622, 45 L. R. A. (N. S.), 962.   Restrictive covenants cannot be established by parol evidence or otherwise save by a recordable instrument containing adequate words so unequivocally evincing the party's intention to limit the free use of the land that its ascertainment is not dependent on inference, implication or doubtful construction.   Thompson, Real Property, Vol. 7, p. 64; *Holliday v. Sphar*, 282 Ky., 45, 89 S. W. (2d), 327.

A purchaser is chargeable with notice of the existence of the restriction only if a proper search of the public records would have revealed it and it is conclusively presumed that he examined each recorded deed or instrument in his line of title and to know its contents.   *Acer v. Westcott*, 46 N. Y., 384, 7 Am. Rep., 355; *Columbia College v. Thacher*, 87 N. Y., 311, 41 Am. Rep., 365; *McPherson v. Rollins*, 107 N. H., 362, 14 N. E., 411; Thompson, Real Property, Vol. 7, p. 106.   If the restrictive covenant is contained in a separate instrument or rests in parol and not in a deed in the chain of title and is not referred to in such deed a purchaser, under our registration law, has no constructive notice of it.

It follows that evidence admitted by the court as to oral statements made by officers of the Realty Company and as to advertisements published in local papers tending to show a general scheme of development of Sunset Hills was incompetent. It has no bearing upon the question presented.

In so holding we are not inadvertent to decisions in other jurisdictions *contra*. The distinction rests in the provisions of the Connor Act.

A deed which makes reference to a map or plat incorporates such plat for the purpose of more particular description but does not bind the seller, nothing else appearing, to abide by the scheme of division laid down on that map. The purchaser has no right to understand or believe from such reference that the grantor will in his future conveyances abide by such plan of division. See *Snyder v. Heath,* 185 N. C., 362, 117 S. E., 294, and *Thomas v. Rogers,* 191 N. C., 736, 133 S. E., 18.

No covenant that the owner will not sell its land except in parcels delineated upon a map of record and with reference to which certain lots have been sold is implied by the making of such map and the sale of certain lots shown thereon, and the right of the owner to dispose of unsold portions of his lots singly or in bulk or by subdividing them into smaller parcels and selling them in such parcels is complete. *Herold v. Columbia Investment & Real Estate Co.,* 14 L. R. A. (N. S.), 1067, 67 Atl., 607, 16 Am. Cas., 580. See also Anno., 57 A. L. R., 764. Such covenants cannot be implied from the mere making and filing of the map showing the different subdivisions, or by selling lots in conformity therewith. *Farquharson v. Scoble,* 38 Cal. App., 680, 177 Pac., 310, 14 L. R. A. (N. S.), 1067; *Gardner v. Moffitt,* 95 A. L. R., 452.

Hence, it follows that any reference to the maps of record contained in the deeds to plaintiffs or in deeds in their line of title was not sufficient to give notice of the alleged restrictions or to impose such restrictions upon the land purchased by them.

The Realty Company admittedly took title to the property free of restriction. No deed in the chain of title to either of the lots owned by plaintiff sets forth any particular restrictions or reservations and no reference is made to any other instrument of record which sufficiently discloses what are the "customary restrictions in conveyances of lots fronting Madison Avenue in Block 1, Section 1, Sunset Hills," or what are the "usual restrictions of the use and reservations placed by A. K. Moore Realty Company on property similarly situated in Sunset Hills." Notwithstanding the general provision in the deeds of the plaintiffs they took without notice of any restrictions or reservations such as would be binding on them.

As stated, it is the duty of a purchaser of land to examine every recorded deed or instrument in his line of title and he is conclusively

presumed to know the contents of such instruments and is put on notice of any fact or circumstance effecting his title which either of such instruments reasonably discloses. He is not, however, required to examine collateral conveyances of other property by any one of his predecessors in title. Even if we should so hold, the record discloses that a reasonable investigation of such collateral conveyances would fail to give sufficient evidence of the alleged restrictive covenants.

In such an investigation an abstractor would naturally look to the conveyances of other property in the immediate vicinity, and particularly to conveyances of property in Block 1, Section 1, facing on Madison Avenue, for information. Such investigation would disclose that Lot No. 7 in Block 1, Section 1, facing on Madison Avenue adjacent to and east of the lots in controversy, and Lot No. 20 in Block 1, Section 2, facing on Madison Avenue across Aycock Street immediately west of such lots, and Lot No. 10 in Block 1, Section 3, diagonally across Madison Avenue, were all conveyed without restriction; that Lots Nos. 7 and 10 were actually in use as business property and that no lot in Block 1, Section 1, facing on Madison Avenue, was conveyed subject to any specific restriction. Thus it would appear that all lots fronting Madison Avenue in Block 1, Section 1, as well as adjacent property, was conveyed without restrictive reservation. Still further investigation would disclose that this particular property had been zoned by the city of Greensboro for business purposes.

Hence, the court erred in declining to charge the jury as prayed by the plaintiffs, as follows: "Gentlemen of the jury, the court instructs you that, if you find the facts to be as testified to by the witnesses and as disclosed from the record evidence, it will be your duty to answer the second issue 'No.'"

We have given full consideration to the plea of estoppel entered by the defendants. Plaintiff Turner, as an officer and salesman of the Realty Company, was without authority to make conveyance with or without restrictive covenants. The defendants accepted deeds containing no stipulation binding the Realty Company to insert like provisions in deeds to other property in the subdivision. Their titles rest in the record. We are constrained, therefore, to hold that there is no sufficient evidence to sustain the plea.

The plaintiffs are entitled to a decree adjudging that they are the owners of the property described in the complaint free and clear of any restrictions against the use thereof for business purposes.

Reversed.

CLARKSON, J., dissents.

SEAWELL, J., concurring in result: I concur, reluctantly, with the result reached in this case, upon other grounds. But I am not entirely in accord with what is said in the main opinion with regard to the Connor Act—C. S., 3309—as an exclusive instrument of proof in showing the existence of a general uniform plan or scheme in the development of property for residential purposes. I do not regard it as necessary to decision, and I think we should reserve the liberty to deal with the facts and legal principles as they may arise in future cases.