CHARLES R. BAILEY v. JACKSON-CAMPBELL COMPANY AND
L. B. JACKSON.

(Filed 27 January, 1926.)

**1. Deeds and Conveyances — Covenants — Restrictions — Notice—Mesne Conveyances.**

Where a tract of land has been platted and lots laid off and sold to purchasers under a general development scheme, containing covenants in the original deeds restricting the character of dwellings to be thereon erected, and excluding stores, hospitals, etc., and the original plats and conveyances have been duly registered, subsequent purchasers or grantees of these lots take with notice of the covenants in the original deeds, and are bound by them, though they may claim title through a mesne conveyance in which these covenants were omitted.

**2. Same—Omission of Covenant in Some of the Deeds.**

The fact that in a general land development scheme of the sale of a tract of land into lots, one of the original deeds omits certain covenants restricting the character of the buildings, etc., to be erected thereon, does not affect the covenants in respect thereto contained generally in the deeds to other lots embraced in the general plan of development.

**3. Same—Parties—Privies—Injunction—Actions.**

Where a grantee of lands laid off and sold into lots in a land development scheme, is bound by covenants in his deed as to the character of dwellings to be erected on the lots, general to those of other purchasers, he may restrain other grantees from breaching like covenants likewise contained in their deeds.

**4. Same—Perpetual Restrictions—Public Policy.**

Where a deed in a division of land into lots under a general residential scheme, contains covenants running perpetually with the lands as to the character of residences to be erected thereon, the covenant will not be declared invalid as being against public policy unless and until conditions arise which would render the covenants objectionable for that reason.

**5. Same—Residences—Apartment Houses—Words and Phrases.**

Where lands are platted and conveyed to purchasers as lots, restricting the buildings to residential purposes, and excluding those for business, hospital and the like: *Held,* the use of the word "residence" does not necessarily include "apartment houses."

APPEAL by defendants from *Lane, J.,* at Chambers in Asheville, 14 November, 1925, continuing a restraining order to the final hearing.

The plaintiff is the owner of the two lots numbered 15 and 16. E. W. Grove and wife conveyed No. 15 to W. L. Jenkins by a deed dated 18 April, 1923, and No. 16 to Jane Banks Amiss by a deed of the same date. Each deed recites a consideration of $7,500 and is duly registered. The plaintiff acquired title to these two lots by mesne conveyances from

the respective grantees. Except as to the pronouns indicating the gender of the grantees, the *habendum* and restrictive covenants in the two deeds above recited are as follows:

"To' have and to hold, the above described land and premises, together with all the privileges and appurtenances thereunto belonging or in·any wise appertaining, unto the said party of the second part, his heirs and assigns, forever, subject to the following restrictions, conditions and stipulations, that is to say:

Whereas, the lot or parcel of land hereinbefore described, is a part of a block or boundary of land, as shown on the plat hereinbefore specifically referred to, the property of the parties of the first part, and their assigns, which said land within said block or specific boundary has been divided into parcels or lots, and laid off and designed to be used exclusively for residential purposes, and,

Whereas, the parties hereunto desire, for the benefit of their own property, and for the benefit of future purchasers and owners of the land shown within the lines of said block, that the same shall be developed, and for a time hereafter used exclusively for private residential purposes:

Now, therefore, the said party of the second part, for himself, his heirs, executors, administrators and assigns, doth covenant to and with the said parties of the first part, their heirs, executors, administrators and assigns, as follows:

1. That they will not erect, license or suffer to be erected, or maintained, on the above described land, or any part thereof, any commercial or manufacturing establishment, or factory, or tenement, or apartment house, or house designed for use by more than one family, or house or building to be used as a sanitarium or hospital of any kind, or, at any time use or suffer to be used, any house or building erected thereon, for any such purpose, or any purpose whatsoever, which may be in any way noxious or offensive to the neighboring inhabitants; that said premises shall not, during the term of twenty-one (21) years, be used for any purpose other than the construction and maintenance of private residences thereon, and during said term, shall be kept, used and maintained in good condition, and in general harmony with the surrounding property within said block. . . .

2. Subject also, as to that part of said lot within the boundaries of what is known as Norwood Park, to all the restrictions, conditions and stipulations, contained and set forth in the deed of the Central Development Company, conveying the same, reference to which said deed, and record thereof, being hereby made for a full recital of said restrictions, conditions and stipulations.

3. That the foregoing covenants shall be covenants running with the land, and shall be kept by the party of the second part, his heirs and assigns, forever."

As we understand, subsection 2 was inserted because the plaintiff derived title to the western portion of his lots from the Central Development Company and to the eastern portion thereof from E. W. Grove.

The plaintiff alleges that the defendants have accepted deeds from said Grove for lots 1, 2, 8, 9, and 10, containing similar covenants and are barred thereby.

On 21 February, 1916, the Central Development Company conveyed to Herbert W. Pelton and his wife, Sarah B. Pelton, the lot adjoining the lands of the plaintiff on the north, facing about 96 feet on Virginia Avenue and running back 120 feet to lot 17; and on 11 February, 1924, said Herbert W. Pelton conveyed his interest therein to Sarah B. Pelton. It is alleged that Sarah B. Pelton holds her title to said lot subject to the *habendum* and restrictive covenants in the deed from the Central Development Company to Herbert W. Pelton and wife, which are as follows:

"To have and to hold the above described land and premises, together with all the rights and appurtenances thereunto belonging, or in any wise appertaining, unto the said party of the second part, her heirs and assigns, forever, subject to the restrictions, conditions and stipulations hereinafter set out, to wit:

The said party of the second part, for herself and her heirs, executors, administrators and assigns, does hereby covenant and agree with the said party of the first part, its successors and assigns, as follows:

1. That she will not erect or suffer to or license to be erected on the land above described, any commercial or manufacturing establishment or factory, or house or building to be used as a sanitarium or hospital of any kind, or at any time use or suffer to be used any building or buildings erected thereon for any such purpose; that she will not erect or suffer to be erected on said land any residence to cost less than $2,500; that in building on said land she will build on the building line 20 feet from the street, as shown and indicated on the said plat hereinbefore referred to, and face or front said house on Virginia Avenue; that she will not build more than one residence on either lot of said land, but may build thereon a garage or stable, in keeping with the premises and residence built thereon, and of sightly appearance; that she will not during the term of twenty years from the date thereof sell or convey said land or any part thereof to a negro or person of any degree of negro blood, or any person of bad character.

BAILEY *v.* JACKSON.

2. That the foregoing covenants shall be covenants running with the land and shall be kept by the party of the second part, her heirs and assigns, forever."

The plaintiff alleges that these restrictive covenants in substance and effect are the same as those which affect the title of the plaintiff to that portion of lots 15 and 16 which was originally in the boundaries of Norwood Park, under the second subdivision above referred to, and conveyed by the Central Development Company.

L. B. Jackson on behalf of the Jackson-Campbell Company entered into a contract with Mrs. Pelton to purchase from her the lot conveyed by the development company to herself and her husband. The Jackson-Campbell Company acquired title to lot 17 from E. W. Grove, but in his deed the only restriction is that no building shall be built thereon within 20 feet of Kimberly Avenue.

The plaintiff and the defendants derive title to a part of their lots from E. W. Grove and to a part from the Central Development Company and the plaintiff alleges that the covenants in the deed from the development company to Herbert W. Pelton and his wife equally affect the plaintiff and the defendant as to that part of their holdings derived from said company.

Upon the pleadings, affidavits, and evidence his Honor continued the restraining order to the hearing and the defendants excepted and appealed.

*Carter, Shuford, Hartshorn & Hughes for plaintiff.*
*Lee, Ford & Coxe and Merrimon, Adams & Adams for defendant.*

ADAMS, J. The vital question is whether the defendants are prohibited by the restrictions in the deed from the Central Development Company to Sarah B. Pelton and in the deeds from E. W. Grove to the plaintiff and other purchasers from building the described apartment house on the lot known as the Pelton property. The plaintiff admits that he derives title to the western portion of his lots from the Central Development Company and to the eastern portion from E. W. Grove. There is a marked difference in the phraseology of the restrictions embraced in the deeds of these respective grantors. The grantees in the deeds from Grove covenant not to erect, license, or suffer to be erected or maintained on the conveyed property any commercial or manufacturing establishment, or factory, or tenement, or apartment house; but as to the grantees in the deeds from the other source there is no direct reference to an apartment house. The restrictive covenants which equally affect the plaintiff and the defendants as to that part of their holdings derived from the Central Development Company include the following: the grantee shall not erect or suffer or license to be erected on his lot any

5—191

commercial or manufacturing establishment or factory or a house or building to be used as a sanitarium or hospital of any kind, or at any time use or suffer to be used any building or buildings erected thereon for any such purpose . . . will not build more than one residence on either lot of said land, . . . and will not during the term of twenty years sell or convey the lot or any part thereof to a negro or to a person of any degree of negro blood, or any person of bad character. It is stipulated that these shall be covenants running with the land and shall be kept by the grantee and his heirs and assigns forever.

The deed from the Central Development Company to Herbert W. Pelton and Sarah B. Pelton, his wife, is dated 21 February, 1916, and the deeds from Grove to W. L. Jenkins and Jane Banks Amiss, under whom in part the plaintiff claims title, were executed 18 April, 1923. The date at which the plaintiff acquired title to the western portion of his lots from the Central Development Company does not distinctly appear. Lot 17 conveyed by Grove is not subject to all the restrictive covenants set out in the other deeds, but it is to be used only as a frontage or approach to Kimberly Avenue.

In *Homes Company v. Falls,* 184 N. C., 426, 439, *Stacy, J.,* citing other authorities quotes with approval the following general statements taken from 18 C. J., 394: "Where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions upon its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee, either upon the theory that there is a mutuality of covenant and consideration or upon the ground that mutual negative equitable easements are created. Where parcels are sold with reference to such a uniform plan to persons having notice thereof, the grantees may enforce the restrictions within this rule irrespective of the order of the several conveyances, and irrespective of whether the covenants run with the land, and without regard to whether the restriction is expressed in the separate conveyances, or whether the person against whom it is sought to enforce the restriction derived title from the same grantor." And in *Davis v. Robinson,* 189 N. C., 589, *Varser, J.,* quoted with approval from *Donahoe v. Turner,* 204 Mass., 274: "Where the original proprietor of a tract of land made conveyances of portions of it subject to certain restrictions, but also conveyed portions of it free from any restrictions whatever, the facts do not warrant a finding that a general building scheme founded on such restrictions was adopted for the entire tract."

With the exception of No. 17, so far as the record discloses all the lots in Block A, known as "E. W. Grove's Kimberly Lands," have been sold subject to the restrictive covenants in the deeds to W. L. Jenkins

and Jane Banks Amiss; and the plaintiff contends that in the sale of all this property Groves adopted a general plan or scheme to be uniformly observed and enforced for the benefit of all purchasers. He says, moreover, that he and the defendants are alike affected with the covenants in the deeds executed by the Central Development Company, as heretofore pointed out.

In the sale of the Grove or Kimberly Avenue property in Block A, a general plan or scheme seems to have been devised and enforced for the promotion of a residential section and the development of the lots therein at least for a specified period by the building of residences or homes; and in our opinion this general scheme is not annulled or defeated by the omission of a restrictive covenant in the deed conveying lot 17, particularly as it appears from its location and topography to be incapable of beneficial use except for the purpose of connecting the Pelton lot with Kimberly Avenue and not to be adaptable or suitable as a lot on which to erect a residence or other building. In fact, the defendant, Jackson-Campbell Company, admits its purpose to be to use this lot as a lawn and entrance to the apartment house to be built on the Pelton property. The restrictive covenants in the Grove conveyances were intended and by by their terms were expressed to be for the benefit of future purchasers and owners of the lots within the designated lines of the block; and the use of lot 17 (not large enough for a building if the restriction limiting the site to twenty feet from Kimberly Avenue be observed) as an entrance to a building, if its erection is prohibited by other restrictive covenants, would not be in keeping with the general scheme under which the lots were sold.

The controversy in reference to the restrictions in the deeds executed by the Central Development Company is dependent principally upon the interpretation of the covenant on the part of the grantee not to "build more than one residence on either lot of said land," though authorized to build a garage or stable in keeping with the premises and residence built thereon. It will be noted that the restrictions in the deed from the Central Development Company to Pelton apply also to the plaintiff's property, a part of which was acquired by Grove from the development company. In the deeds made by Grove to the parties under whom the plaintiff claims these restrictions and others more stringent were included—the Grove deeds expressly prohibiting the erection of an apartment house or any house to be occupied by more than one family. It appears, then, that the plaintiff is undertaking as grantee to enforce a restrictive covenant against another grantee claiming under the development company, a common source, whose deeds contained the same restrictions—thereby presenting the question which was disinguished because not raised in *Homes Company v. Falls, supra,* p. 431.

COBURN *v.* COMRS.

The covenants in the deeds executed both by Grove and by the development company indicate a common purpose to use the lots as sites for residences and to prevent the erection of more than one residence on either lot. So the point in controversy is whether the restrictions in the deed to Pelton, under whom the Jackson-Campbell Company holds a contract or deed without a repetition of the restrictions will prevent the erection of the proposed apartment house on the Pelton property, a part of the contract being that the covenants shall run with the land and be kept by the grantee, his heirs and assigns forever.

By a critical examination of the record and the authorities we are satisfied that an apartment house is not a residence in contemplation of the several restrictive covenants set out in the various deeds. We have not overlooked the reasoning in *Hutchinson v. Ulrich,* 21 L. R. A. (Ill.), 391, but do not regard it as controlling in our interpretation of the restrictions in the present case. These covenants the plaintiff has a right to enforce unless precluded by their omission from the deed executed by Pelton to the defendant company, and this omission, we think, does not antagonize the plaintiff's position. The defendants acquired title with notice of the covenants and are barred thereby. 18 C. J., 394, 397. It has been suggested that the restrictions, having no limitation, are void as against public policy. There is highly respectable authority for the position that a restriction of this kind is not necessarily void because it purports to be perpetual, though it is not impossible that conditions may arise which would impel a relaxation of the rule. 18 C. J., 401.

The judgment of the Superior Court is

Affirmed.