The cause was submitted upon facts agreed, from which it appears that on 2 August, 1930, the plaintiff and the defendant entered into a certain written contract whereby the plaintiff agreed to lease to the defendant lot No. 12, Block E, of Myers Park, made 16 December, 1912, and recorded in Book 230, page 123. The proposed lease provided that the lessee should have possession and use of said lot, free and clear "of building restrictions and restrictions affecting the use and occupancy thereof for business purposes for a period of five years," etc. The defendant agreed to lease the property, but when the plaintiff tendered the lease, the defendant refused to accept it upon the ground that the plaintiff "did not have or could not convey to the defendant the unrestricted use and occupancy of said lot," etc.
The facts upon which the defendant refused to accept the lease were substantially as follows: *Page 291 
1. That the Stephens Company, the original owner of a large acreage covering the locus in quo, had subdivided the property into various blocks and lots, and thereafter conveyed said property, including the locus inquo, by deeds containing restrictions (a) "that the property shall be used for residence purposes only and shall be occupied and owned by people of the white race only"; (b) a number of other restrictions not pertinent to this controversy.
Block E, of Myers Park plat, contains thirteen lots. Said lot No. 12 fronts on the Providence Road. Upon said Providence Road business development has become very active, so that on the property adjoining the property of plaintiff a large store building, containing two grocery stores and one drug store over which there is a public dance hall, has been erected. South of the locus in quo "and for a distance of approximately 2,500 feet a considerable portion of the property fronting on the Providence Road is unrestricted and has commanded a high price on account of the fact that all of the unrestricted portion may and part of it is now being used for business purposes; and on said Providence Road to the south of the locus in quo and a distance of approximately 1,100 feet, there is located a miniature golf course; that to the south of said golf course on said Providence Road, a distance of approximately 1,500 feet from the locusin quo is located a large gasoline filling station; that to the south of the said filling station a distance of approximately 1,600 feet from thelocus in quo is located seven mercantile stores; that to the south of said seven stores and a distance of approximately 2,500 feet from the locus inquo on said Providence Road are located three grocery stores; that on said Providence Road, and approximately 500 feet to the north of the locus inquo, is located the property known as the Home Place of Mac. D. Watkins, fronting approximately 500 feet on said Providence Road, which is unrestricted."
The owners of lot No. 13, fronting Providence Road, and adjoining thelocus in quo, have executed a release, releasing the lot of plaintiff "from any and all restrictions, restricting or limiting its use and occupancy for business purposes save that it shall be occupied and owned by people of the white race only."
The owners of lots 2, 3, 4, 5, 6, 8, and 12 in said block have released to the owner of lot 13 for the purpose of permitting the owner of said lot 13 to erect an art studio on said lot "to do any and everything necessary to the proper conduct of the business of a photographer."
The cause was heard and the following judgment entered:
"This cause, coming on to be heard before his Honor, J.H. Harwood, judge presiding at the October Special Term, 1930, of the Superior Court of Mecklenburg County, and being heard upon the pleadings and agreed statement of facts submitted by the parties as appears in the *Page 292 
record; and the court being of the opinion and finding as matters of legal inference upon the facts so agreed:
"That, on account of the growth and expansion of the city of Charlotte, the extension of its business district; the establishment and operation of business property immediately adjacent to the locus in quo and the property shown on said Block E, fronting on the Providence Road; that the owner of lot No. 13, the only other lot in said subdivision fronting on said Providence Road, has by a proper release, released the locus in quo of any and all conditions and restrictions limiting or affecting its use and occupancy for business purposes; that each block or subdivision in the development known as Myers Park was developed as a separate unit; that the Stephens Company has conveyed all the lots shown on said Block E, and does not own any property in close proximity to said Block E; that the character of the property fronting on the Providence Road immediately adjacent to thelocus in quo and the subdivision known as Block E, has so changed as to make it impossible to accomplish the purposes intended by the restrictive covenants set out in the original deeds conveying the property fronting on said Providence Road all as set out in the agreed facts.
"That, by reason of the changed conditions aforesaid, it is inequitable and unjust, and detrimental to the market value of the property, to require the enforcement of said restrictions and that the property of the plaintiff described in the complaint is no longer subject to said restrictions.
"It is, therefore, ordered, adjudged and decreed that the defendant specifically perform his contract with plaintiff for the lease of said premises and that plaintiff recover of the defendant the costs of this action, to be taxed by the clerk."
From the foregoing judgment the defendant appealed.
There is no new or novel proposition of law presented by the record. The sole question is whether under the agreed facts the case is controlled byJohnston v. Garrett, 190 N.C. 835, 130 S.E. 835, or Starkey v. Gardner,194 N.C. 74, 138 S.E. 408. This Court has held "that the subdivisions of Myers Park are each a separate, distinct and integral development."Stephens Co. v. Homes Co., 181 N.C. 335, 108 S.E. 233; Johnston v.Garrett, 190 N.C. 835.
When persons desiring to become home owners purchase property in a subdivision protected by certain desirable restrictive covenants, the security of such covenants ought not to be destroyed by slight departures *Page 293 
from the original plan, and valid restrictions appearing in all the deeds for lots in such subdivision should not be eliminated and wiped out because of immaterial violations of such restrictions. One of the essential tests prescribed, for determining whether restrictions should be eliminated was thus expressed in Starkey v. Gardner, supra: "However, it is equally true that if the character of the community has been changed by the expansion of a city and the spread of industry or other causes resulting in a substantial subversion or fundamental change in the essential character of the property, then, in such cases, equity will not rigidly enforce the restriction."
Therefore, the paramount question is whether the facts in the case at bar bring the controversy within the principle applied in the Starkey case. There is no fact tending to show any violation of the restriction within the subdivision itself, except the fact that the owners of seven lots have signed releases in order to permit the owner of lot 13 to erect an art studio on said lot. The nature of such building does not appear. However, we are of the opinion that the evidence does not show such "substantial subversion or fundamental change in the essential character of the property" as to warrant the removal of the restrictions.
Reversed.