MRS. GERTRUDE HIGDON AND HUSBAND, E. R. HIGDON, SUING ON BEHALF OF THEMSELVES AND ALL OTHER OWNERS OF LOTS IN THE SUBDIVISION OF MYERS PARK IN THE CITY OF CHARLOTTE, MECKLENBURG COUNTY, NORTH CAROLINA, WHO MAY COME IN AND BE MADE PARTIES PLAINTIFF IN THIS ACTION, v. BEN JAFFA AND WIFE, BLANCHE JAFFA.

(Filed 14 December, 1949.)

**1. Deeds § 16b—**

Where the owner of lands subdivides same and sells separate parcels with restrictions pursuant to a general plan of development, each grantee, and also each owner of a lot by *mesne* conveyances from such grantee, may

HIGDON v. JAFFA.

enforce the restrictions against any other owner who took title with notice of the restrictions.

**2. Same—**

A purchaser of land is chargeable with notice of restrictive covenants if such covenants are contained in any recorded deed or other instrument in his line of title, even though it does not appear in his immediate deed, since he is charged with notice of every fact affecting his title which an examination of his record chain of title would disclose.

**3. Same—**

Where the owner of land subdivides and sells same according to a general scheme for the entire tract, the fact that he develops contiguous land owned by him under a different plan does not affect the uniformity of the restrictions essential to a general scheme of development, since each is a separate, distinct and integral subdivision.

**4. Same—**

Where the owner of a subdivision sells each lot therein with restrictive covenants according to a general scheme of development, a further provision in its deeds to the several purchasers that nothing therein contained should impose any restrictions or easements on any land of the owner not conveyed, is rendered nugatory by its sale of every lot in the development subject to the restrictions, and the owner cannot revive such provision by the repurchase of lots theretofore sold by it under the restrictions.

**5. Same—**

The fact that the owner of a subdivision by stipulation in one deed retains the right to alter or close any street in the subdivision not adjacent to the lot sold and not necessary to the full enjoyment of the property conveyed can have no bearing on the uniformity of the scheme of development when it appears that the street in question is necessary to the enjoyment of the lot sold and further had been dedicated and accepted by the municipality for use as a street.

**6. Same—**

The fact that in addition to the restrictive covenants common to all the deeds to lots in a residential subdivision, one deed alone contains a restriction that no part of the lot "shall be used for agricultural purposes except the part set aside as service premises, which should not be nearer the street than 75 feet" *is held* not such a variation as to destroy the uniformity of the general scheme of development, it not being necessary to a general scheme of development that there be absolute uniformity in detail of the restrictions.

**7. Trial § 22a—**

On motion to nonsuit, plaintiff's evidence will be taken as true and he will be given advantage of every fair and legitimate inference which it raises.

**8. Deeds § 16—**

In this action by the owner of a lot in a residential subdivision to enjoin another owner from using his lot for business purposes, nonsuit is improp-

erly entered on plaintiff's evidence tending to show that all of the lots in the subdivision had been sold with restrictions according to a general scheme of developing the property exclusively for residential purposes and that there had not been a single violation of the restrictive covenants anywhere within the subdivision.

**9. Same—**

The fact that restrictive covenants in deeds to land in a subdivision are inserted by the owner to enable it to dispose of the property to better advantage does not create a mere personal right in favor of the owner, since such restrictions are devised also for the benefit of purchasers of lots in the subdivision.

**10. Same—**

Mere increase in traffic upon streets in a subdivision restricted solely to residential purposes does not impair the suitability of lots within the subdivision for residential purposes so as to render the restrictions unenforceable in equity.

**11. Same—**

The fact that an adjacent subdivision or surrounding property is used for business purposes does not alter the character of a subdivision used exclusively for residential purposes so as to justify a court of equity in relieving an owner against his restrictive covenants, and further, evidence as to changed conditions outside the development are incompetent in an action to enjoin the violation of the restrictions.

APPEAL by plaintiffs from *Patton, Special Judge,* at the May Term, 1949, of MECKLENBURG.

This is a civil action in which the plaintiffs, as owners of Lot No. 17 in Block 11-C of a certain subdivision in Myers Park in Charlotte, North Carolina, seek to enjoin the defendants from erecting or maintaining upon an adjoining lot, *i.e.,* Lot No. 16 in Block 11-C of such subdivision, "any business or commercial structure whatsoever" on the theory that applicable restrictive covenants limit the use of such adjoining lot to residential purposes.

To sustain their claim to the relief sought, the plaintiffs presented testimony of the matters and things set forth below.

On 24 June, 1924, the Stephens Company, a corporation, subdivided a tract of land in Myers Park in Charlotte, which it owned in fee, into 37 building lots, whose irregular shapes and comparatively large sizes rendered them more suitable for residential purposes than for business uses. In so doing, the Stephens Company virtually bisected the property from east to west by a passage named Henley Place, which it dedicated to public use. Such dedication was accepted by the City of Charlotte, which maintains Henley Place as one of its public streets. Henley Place intersects with three other thoroughfares, to wit, Baldwin Avenue, East

Morehead Street, and King's Drive, at the western boundary of the tract. The Stephens Company designated the 20 lots of the subdivision lying north of Henley Place as Block 11-D, and the 17 lots of the subdivision situate south of Henley Place as Block 11-C. Lot No. 16 of Block 11-C abuts upon the intersection of Baldwin Avenue, East Morehead Street, Henley Place, and King's Drive. It is bounded on the east by Lot No. 17 of Block 11-C, which fronts on Henley Place alone.

The Stephens Company caused a map of the subdivision, which it styled a "plat of Blocks 11-C and 11-D, Myers Park, Charlotte, N. C.," to be registered in the office of the Register of Deeds of Mecklenburg County, and sold all of the 37 lots in the subdivision to various grantees by recorded conveyances describing the property by reference to the recorded map.

All of the deeds from the Stephens Company to the original purchasers of the 37 lots of the subdivision prescribe in unvarying phraseology that "the property shall be used for residential purposes only"; that "nothing herein contained shall be held to impose any restrictions on or easements in any land of the Stephens Company not hereby conveyed"; and that "no apartment house shall be erected on the lot hereby conveyed." The deeds expressly state, however, that the term "apartment house" shall be construed to mean "any building designed to house more than two families." The conveyances also contain additional "covenants, conditions, and restrictions" regulating the number of residences to be erected on the lots; the building lines of residences, outbuildings, and fences; the height and cost of residences; and the height of fences. They specifically state that "no sign boards of any description shall be displayed on the property, with the exception of signs 'for rent,' which signs shall not exceed 2 x 3 feet in size."

Each deed from the Stephens Company to a purchaser expressly recites that the property therein described is conveyed subject to the specified restrictions on its use, which the parties to the instrument stipulate "shall be covenants running with the land" and which the grantee, acting "for himself, his heirs and assigns, hereby covenants and agrees to perform and abide by."

Lot No. 17 of Block 11-C was originally transferred to A. I. Henderson by the Stephens Company on 1 September, 1925, by a duly registered deed containing the restrictions on use heretofore set out, and passed to the *feme* plaintiff, Mrs. Gertrude Higdon, in 1937 under *mesne* conveyances from Henderson. The plaintiff, E. R. Higdon, unites in this action in his character as husband of the *feme* plaintiff.

The defendants, Ben Jaffa and his wife, Blanche Jaffa, deraign title to Lot No. 16 of Block 11-C under the following recorded instruments: (1) Deed from Mrs. Sophia Goodman to the defendants, dated 26 March,

1937; (2) deed from Home Real Estate and Guaranty Company to Mrs. Sophia Goodman, dated 30 October, 1930; (3) deed from G. O. Doggett to Home Real Estate and Guaranty Company, dated 6 April, 1926; and (4) deed from the Stephens Company to G. O. Doggett, dated 25 March, 1926. The deed from the Stephens Company to Doggett contains the restrictions on use heretofore described, and the deed from Doggett to Home Real Estate and Guaranty Company recited that the property is conveyed subject to the restrictive covenants set out in the deed from the Stephens Company to Doggett. The last two instruments in the chain of title of the defendants do not refer to the restrictions.

After it had sold all of the lots in the subdivision by registered deeds containing the restrictions, the Stephens Company reacquired Lots Nos. 1, 2, and 3 of Block 11-D under *mesne* conveyances from those who had formerly purchased such lots from it.

The deed from the Stephens Company to A. I. Henderson contains a restrictive covenant bearing the number 9 and reading as follows: "The Stephens Company, its successors or assigns, shall have the right to change, alter or close up any street or avenue shown upon said map not adjacent to the lot above described and not necessary to the full enjoyment by the party of the second part of the above described property, and shall retain the right and title to, and control of all streets and avenues within the boundaries of Myers Park, subject only to the rights of the party of the second part for the purposes of ingress and egress necessary to the full enjoyment of the above described property." It does not appear that this provision is in any other deed. Moreover, the deed from the Stephens Company to G. O. Doggett has an eighth restrictive covenant in these words: "No part of the property shall be used for agricultural purposes except the part set aside as service premises, which shall not be nearer any street than seventy-five feet." This clause does not appear in any of the conveyances in the plaintiffs' chain of title.

Many proprietors have erected substantial and valuable dwellings "up and down Henly Place" on lots shown on the recorded map of the subdivision. Nearly all of these structures have two stories, and most of them are of brick construction. Some are duplex or two-family houses. A few of them are rented. "There are no business properties on any of the lots shown on the map of Blocks 11-C and 11-D, only residential."

The plaintiffs have erected a substantial duplex dwelling on Lot 17 of Block 11-C. They reside in one side of it, and rent the other. 

Lot No. 16 of Block 11-C is vacant. The defendants concede, however, that they are preparing to erect a store building thereon and to lease it to third persons for merchandising purposes, and that they will do so unless precluded by decree in this action.

The plaintiffs entered into two stipulations at the trial at the request of the defendants. In the first stipulation, they admit that the Stephens Company had established other subdivisions in Myers Park; that one of these other subdivisions was located just across East Morehead Street from the lot of the defendants; that the Stephens Company had sold lots in such other subdivision for commercial purposes; and that the purchasers of such lots had erected various types of business buildings thereon, and were devoting them to sundry commercial enterprises. The second stipulation recites that the increase of vehicular traffic along Baldwin Avenue, East Morehead Street, Henley Place, and King's Drive since the plaintiffs and the defendants bought their respective lots in Block 11-C of Myers Park has necessitated the installation of a traffic circle at the intersection of such streets "to slow up and regulate traffic."

Furthermore, the court allowed the defendants to cross-examine the plaintiff, E. R. Higdon, as "to conditions and changes in the territory outside of the subdivision shown on the map" of Blocks 11-C and 11-D of Myers Park. The plaintiffs reserved exceptions to the testimony elicited by such cross-examination.

After the plaintiffs had offered their evidence and rested their case, the court sustained the motion of the defendants for a compulsory nonsuit under G.S. 1-183, and entered judgment accordingly. The plaintiffs excepted and appealed, assigning the entry of the nonsuit and the admission of the evidence as to conditions and changes in the territory outside the subdivision as error.

*James L. DeLaney for plaintiffs, appellants.*

*Charles W. Bundy, Sol Levine, and Arthur Goodman for defendants, appellees.*

ERVIN, J. The primary question presented by this appeal is the propriety of the compulsory nonsuit.

It is well settled in this State that "where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions on its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee, either on the theory that there is a mutuality of covenant and consideration, or on the ground that mutual equitable easements are created." 26 C.J.S., Deeds, section 167; *Brenizer v. Stephens,* 220 N.C. 395, 17 S.E. 2d 471; *Bailey v. Jackson,* 191 N.C. 61, 131 S.E. 567; *Homes Co. v. Falls,* 184 N.C. 426, 115 S.E. 184.

Moreover, the right to enforce the restrictions in such case is not confined to immediate purchasers from the original grantor. It may be exercised by subsequent owners who acquire lots in the subdivision

covered by the general plan through *mesne* conveyances from such immediate purchasers. 14 Am. Jur., Covenants, Conditions, and Restrictions, section 319.

Furthermore, covenants limiting the use of land may be enforced against a subsequent purchaser who takes title to the land with notice of the restrictions. *Davis v. Robinson,* 189 N.C. 589, 127 S.E. 697. The law contemplates that a purchaser of land will examine each recorded deed or other instrument in his chain of title, and charges him with notice of every fact affecting his title which such an examination would disclose. In consequence, a purchaser of land is chargeable with notice of a restrictive covenant by the record itself if such covenant is contained in any recorded deed or other instrument in his line of title, even though it does not appear in his immediate deed. *Sheets v. Dillon,* 221 N.C. 426, 20 S.E. 2d 344; *Turner v. Glenn,* 220 N.C. 620, 18 S.E. 2d 197; *Bailey v. Jackson, supra.*

The defendants maintain with much earnestness that the nonsuit was proper on the ground that the testimony at the trial was insufficient as a matter of law to sustain the allegations of the complaint that the Stephens Company had imposed the restrictions on the use of the lots pursuant to a general plan to develop the subdivision as a restricted residential community or neighborhood. They advance several arguments to support this position.

They assert initially that the Stephens Company had developed Myers Park as a unit composed of its different subdivisions; that it had sold lots in another subdivision of Myers Park situated just across East Morehead Street from the lot of the defendants for commercial purposes; that the purchasers of such lots had erected various types of business buildings thereon, and were devoting the same to sundry commercial enterprises; and that these facts negative the claim of the plaintiffs that Blocks 11-C and 11-D, which are merely parts of Myers Park as a whole, constitute a restricted residential community or neighborhood. The defendants overlook the fact that this identical contention has been expressly rejected by this Court on at least four occasions. *McLeskey v. Heinlein,* 200 N.C. 290, 156 S.E. 489; *Johnston v. Garrett,* 190 N.C. 835, 130 S.E. 835; *Homes Co. v. Falls, supra; Stephens Co. v. Homes Co.,* 181 N.C. 335, 107 S.E. 233. The land shown on the map of Blocks 11-C and 11-D of Myers Park "is in fact, and was designed to be, a separate, distinct and integral subdivision," bearing no relationship whatever in the present field of law to any other subdivision of Myers Park. *Stephens Co. v. Homes Co., supra.*

The defendants insist secondarily that the restrictive covenants in the deeds from the Stephens Company to the original purchasers were designed to create a mere personal right in favor of the Stephens Company,

and were not intended to benefit the lots sold or those who purchased them. They say that this proposition is established by this provision appearing in all of the original deeds: "Nothing herein contained shall be held to impose any restrictions on or easements in any land of the Stephens Company not hereby conveyed." The defendants rely on *Humphrey v. Beall,* 215 N.C. 15, 200 S.E. 918, in which this Court corrected an erroneous judgment rendered by the writer of this opinion while he was serving as a Superior Court Judge and by reason thereof was still subject to what *Chief Justice Bleckley* of the Supreme Court of Georgia was pleased to call "the fallibility which is inherent in all courts except those of last resort." *Broome v. Davis,* 87 Ga. 584, 586, 13 S.E. 749.

The facts in the instant action are quite different from those in *Humphrey v. Beall,* notwithstanding that most of the deeds in that case contained a stipulation like that quoted above. The grantor in the *Humphrey case, i.e.,* the Charlotte Consolidated Construction Company, retained unsold approximately 60 lots scattered throughout the 255 lots in its development, and was empowered by the clause under consideration to sell those unsold lots without restrictions. The Stephens Company, however, did not reserve any land in Blocks 11-C and 11-D of Myers Park free from the restrictions. The contrary is true. It sold every lot in the subdivision subject to restrictive covenants limiting its use to residential purposes. In so doing, the Stephens Company rendered the stipulation in question wholly nugatory. It did not revive this clause by repurchasing Lots Nos. 1, 2, and 3 of Block 11-D. This is necessarily so because its re-acquirement of those lots was under chains of title subjecting them to the restrictive covenants. *Pappas v. Eighty Hundred Realty Co.,* (Mo. App.), 138 S. W. 2d 762. Besides, each deed in the *Humphrey case* expressly provided that any restrictions upon the lot sold might be changed at any time and in any manner by the mutual written agreement of the grantor and the owner for the time being of the lot conveyed. No such vitiating stipulation appears in the deeds of the Stephens Company.

The defendants invoke the ninth restrictive covenant in the deed from the Stephens Company to A. I. Henderson, who was the plaintiffs' antecessor in title, as a refutation of the idea that the restrictions were embodied in the conveyances pursuant to a general plan to develop the subdivision as a restricted residential community or neighborhood. This argument is without convincing force. The ninth restrictive covenant in the Henderson deed has never vested in the Stephens Company any power "to change, alter, or close up" Henley Place, which is the only "street or avenue" shown on the map of Blocks 11-C and 11-D of Myers Park. This is true because Henley Place is adjacent to Lot No. 17 and is necessary to its full enjoyment. Moreover, the controversy in respect to

this particular restrictive covenant is a mere academic disquisition. The City of Charlotte accepted the dedication of Henley Place to public use as a street of the municipality, and has exclusive control over it as such.

The defendants contend finally on the present aspect of the litigation that the eighth restrictive covenant in the deed from the Stephens Company to G. O. Doggett, their predecessor in title, purports to limit the use of their lot "for agricultural purposes"; that no comparable restriction appears in the plaintiff's chain of title; and that this variation in restrictions destroys the uniformity essential to establish a general plan for the improvements of the lots in Blocks 11-C and 11-D. This argument ignores the legal principle that absolute uniformity in details is not required to establish a general plan for the development of a tract subdivided into a number of building lots. *Franklin v. Realty Co.*, 202 N.C. 212, 162 S.E. 199; *Bailey v. Jackson, supra; Snow v. Van Dam,* 291 Mass. 477, 197 N.E. 224; *Humphreys v. Ibach,* 110 N. J. Eq. 647, 160 A. 531, 85 A.L.R. 980; *Neidlinger v. New York Ass'n for Improving Condition of Poor,* 121 Misc. 276, 200 N.Y.S., 852. The mere fact that all of the restrictions are not exactly the same in all of the deeds does not prove that the restrictive covenants limiting the use of the property to residential purposes are not intended to apply to all the lots in the subdivision. 14 Am. Jur., Covenants, Conditions, and Restrictions, section 202.

In passing on the propriety of the compulsory nonsuit, we must assume that the evidence of the plaintiffs is true, and give them the advantage of every fair and legitimate inference which it raises. *Hughes v. Thayer,* 229 N.C. 773, 51 S.E. 2d 488.

When the testimony of the plaintiffs is accepted as truth, it makes out this case:

The Stephens Company subdivided Blocks 11-C and 11-D of its Myers Park property into 37 building lots so that it might sell the entire property in separate parcels to various purchasers. The shapes and sizes of the lots rendered them more suitable to residential purposes than to business uses. The Stephens Company sold all of the 37 lots to various grantees by deeds containing covenants that the different grantees and their respective heirs and assigns should use the lots "for residential purposes only." The defendants and all other present proprietors of property within the subdivision took title to their respective lots with notice of the restrictions. This is necessarily so for all of them acquired their lands under recorded chains of title containing deeds embodying the restrictive covenants. Many of the owners of lots in Blocks 11-C and 11-D have erected substantial and valuable dwellings upon their holdings. There has not been a single violation of the restrictive covenants anywhere within the subdivision. The erection of duplex houses and the renting

of dwellings within the subdivision do not constitute violations of the covenants for the deeds permit these acts.

These facts fairly and legitimately warrant these inferences:

It cannot be gainsaid that the restrictive covenants were put in the deeds to enable the Stephens Company to dispose of its property to its greatest advantage. But this does not show that the restrictions were designed to create a mere personal right in favor of the Stephens Company, and were not intended to benefit the lots sold and those who bought them. The reverse is, indeed, the case. The object of the Stephens Company to sell its land to its greatest advantage was effected only because its representations as to the restrictions convinced the purchasers of the several lots that the observance of the restrictions within the borders of the subdivision would enhance the value of the lots which they purchased. This being so, the restrictions were devised to benefit the lots in the subdivision, and those who bought them as well as the Stephens Company. *Sanford v. Keer,* 80 N. J. Eq. 240, 83 A. 225, 40 L.R.A. (N.S.) 1090. The soundness of this conclusion is shown by another factor. Since the Stephens Company did not contemplate reserving any part of the land and did not do so, it necessarily intended that the protection of the restrictive covenants should inure to the benefit of the purchasers of the lots in the subdivision, and that each of the purchasers should be entitled to enforce them as against all of the others.

It follows, therefore, that the evidence of the plaintiffs was sufficient to sustain a finding that the restrictive covenants were placed in the deeds pursuant to a general plan to develop Blocks 11-C and 11-D of Myers Park as a restricted residential community or neighborhood.

The defendants assert with much strenuosity, however, that even this conclusion does not warrant the reversal of the compulsory nonsuit. They say that Blocks 11-C and 11-D of Myers Park have lost their residential character since the restrictions were created, and that in consequence it would be oppressive and inequitable to give the restrictions effect as against their lot. This claim is predicated on the evidence that traffic has increased on Baldwin Avenue, East Morehead Street, Henley Place, and King's Drive, and that business establishments have grown up in territory adjoining or surrounding the subdivision.

The testimony invoked by the defendants on this phase of the case does not show that the increased traffic has substantially impaired the suitability of lots in Blocks 11-C and 11-D for residential purposes. *Continental Oil Co. v. Fennemore,* 38 Ariz. 277, 299 P. 132; *Strong v. Hancock,* 201 Cal. 530, 258 P. 60; *Ludgate v. Somerville,* 121 Or. 643, 256 P. 1043, 54 A.L.R. 837.

It does disclose, however, that all business changes have occurred in territory outside the development. There is not a single business estab-

lishment within the subdivision. It is, indeed, utilized exclusively for residential purposes in conformity to the restrictions. This being so, the fact that adjoining or surrounding property is now used for business purposes does not alter the character of the subdivision itself, and those who have been led to buy lots or build homes in that locality by reason of the restrictive covenants are entitled to have their property preserved for the purpose for which they purchased it. *Vernon v. Realty Co.,* 226 N.C. 58, 36 S.E. 2d 710; *Turner v. Glenn, supra; Brenizer v. Stephens, supra; McLeskey v. Heinlein, supra.*

This conclusion compels a further decision for the plaintiffs on the secondary question arising on the appeal. The court erred in permitting the defendants to cross-examine the plaintiff, E. R. Higdon, as to changed conditions outside the development. *Turner v. Glenn, supra; Brenizer v. Stephens, supra.*

For the reasons given, the compulsory nonsuit is
Reversed.