J. C. SEDBERRY AND IRENE SEDBERRY, HIS WIFE, v. GRADY L. PARSONS.

(Filed 29 November, 1950.)

**1. Deeds § 16b—**

Where the owner of lands subdivides same and sells separate parcels with restrictions pursuant to a general plan of development, each grantee and also each owner of a lot by *mesne* conveyances from such grantee, may enforce the restrictions against any other owner who took title with notice of the restrictions.

**2. Same—**

A purchaser of land is chargeable with notice of restrictive covenants if such covenants are contained in any recorded deed or other instrument

in his line of title, even though they do not appear in his immediate deed, since he is charged with notice of every fact affecting his title which an examination of his record chain of title would disclose.

**3. Same—**

The primary test of the existence of a general plan for the development or improvement of a tract of land divided into a number of lots is whether substantially common restrictions apply to all lots of like character or similarly situated.

**4. Same—**

Where a block comprising twenty-one lots is developed as a single subdivision and all the deeds to lots therein contain general restrictive covenants, but the deeds to only eleven of them contain provision against subdivision of any lot so as to result in a plot having less than one-half an acre, *held*, there is no substantial uniformity in the restrictions as to the size of the lots in the block, and the owner of a lot by *mesne* conveyances from the original purchaser, whose deed alone contained the restriction as to size, may sell same free of such restrictions.

**5. Same—**

The fact that lots in a block developed as a single subdivision are sold with reference to a map showing each lot to be at least one-half an acre in size cannot create a covenant by implication that the lots should not be changed in size.

JOHNSON, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Phillips, J.,* at the October Term, 1950, of MECKLENBURG.

Controversy without action under G.S. 1-250 involving the question whether a clause in a deed in the chain of title of the vendors constitutes a restriction prohibiting the sale of the land conveyed by the deed in a parcel smaller in area than half an acre.

The facts giving rise to the controversy are as follows:

1. Block 40 of Myers Park in Charlotte, North Carolina, which was formerly owned by the Stephens Company, is irregular in shape, and is isolated from all other property by three public streets known as Queens Road, Briarcliff Place, and Briarwood Road.

2. The Stephens Company subdivided the block into 21 residential lots of varying shapes and sizes. The subdivision was not made on a single occasion. On 4 February, 1914, the eastern part of the tract, which comprised 57 per cent of the total area of the block, was partitioned into twelve lots numbered from 1 to 12, inclusive, and a first map depicting these twelve lots and the undivided western portion of the block as "Block 40, Myers Park, Charlotte, N. C.," was thereupon admitted to record in the office of the Register of Deeds of Mecklenburg County. The Stephens Company sold lots 2 to 9, inclusive, to various persons prior to

5 October, 1923, by deeds referring to the first map. On 5 October, 1923, the Stephens Company divided the western portion of the block into nine additional lots numbered from 12 to 21, inclusive, and caused a second map portraying all 21 lots "as Block 40, Myers Park, Charlotte, N. C.," to be recorded in the office of the Register of Deeds of Mecklenburg County. The Stephens Company sold lots 1, 10, 11, 12, .13, 14, 15, 16, 17, 18, 19, 20, and 21 to sundry purchasers subsequent to 5 October, 1923, by deeds referring to the second map. Although the record is silent on the point, it is assumed that the recorded maps indicate that each of the twenty-one lots in Block 40 of Myers Park was originally at least half an acre in area.

3. All of the deeds conveying lots in Block 40 of Myers Park to the immediate grantees of the Stephens Company were registered in due form of law in the office of the Register of Deeds of Mecklenburg County, and purport to impose numerous similar restrictions not germane to the present litigation upon the several lots in the block for the purpose of rendering them desirable for residential purposes.

4. Each of the deeds mentioned in the preceding paragraph provides that "nothing herein contained shall be held to impose any restriction on or easements in any land of the Stephens Company not hereby conveyed."

5. The several deeds conveying lots 1 to 11, inclusive, of Block 40 of Myers Park to the immediate grantees of the Stephens Company contain this clause: "No subdivision of any part of the above described property by sale, or otherwise, shall be made so as to result in a plot having an area of less than half an acre." But the several deeds conveying lots 12 to 21, inclusive, of Block 40 of Myers Park to the immediate grantees of the Stephens Company do not contain such clause, or any comparable provision.

6. This litigation is concerned primarily with lot 2, which originally embraced an area slightly in excess of half an acre. This lot was conveyed by the Stephens Company to the Thies-Smith Realty Company by a deed bearing date 1 June, 1916, and containing the restrictions referred to in paragraph three, the provisions quoted in paragraph four, and the clause set out in paragraph five. Lot 2 afterwards passed as a whole under *mesne* conveyances to Oliver F. Roddey and his wife, Lottie C. Roddey, who added a narrow strip of it to adjacent lot 3 owned by them, and conveyed the remainder, which embraced 1170 square feet less than one-half an acre, to the plaintiffs, J. C. Sedberry and wife, Irene Sedberry, by a deed dated 2 November, 1946. The plaintiffs thereafter reduced the size of the land thus acquired by them by conveying a part of it to Hannah J. Withers, owner of abutting lot 1, and by adding another part of it to adjoining lot 21 on which their home is situate.

The deeds to the plaintiffs and their immediate grantors do not contain restrictions of any sort. The only lots in Block 40 of Myers Park physically affected by the detachments from lot 2 are lots 1, 2, 3, and 21. The remaining portion of lot 2 contains 4,580 square feet less than one-half an acre. It is vacant, and affords a sufficient site for a house complying with all of the restrictions referred to in paragraph three.

7. On 1 November, 1949, the plaintiffs and the defendant, Grady L. Parsons, entered into a contract in writing whereby the defendant obligated himself to pay the plaintiffs $3,150.00 for the residue of lot 2 of Block 40 of Myers Park provided the clause in the deed from the Stephens Company to the Thies-Smith Realty Company, dated 1 June, 1916, and quoted in full in paragraph five does not impress a restriction upon lot 2, prohibiting a sale of any part thereof smaller in area than half an acre.

8. The plaintiffs have tendered to defendant a duly executed deed sufficient in form to vest the remainder of lot 2 in the defendant free from any restriction explicit or implicit in the clause in question, and have demanded payment by the defendant of the price specified in the contract of the parties. The defendant has refused to accept the proffered deed and to pay the stipulated price on the sole ground that the residue of lot 2 is smaller in area than half an acre and in consequence its sale is prohibited by the clause in question. Prior to the submission of the controversy to the court, the Stephens Company, which had previously sold all the lots in Block 40 of Myers Park, executed to plaintiffs a duly recorded instrument whereby it undertook to release "the plaintiffs, their heirs and assigns, and said lot 2 in Block 40 . . . from the restriction . . . contained in the deed from Stephens Company to Thies-Smith Realty Company." The controversy between the parties is whether the plaintiffs are entitled to enforce the contract of 1 November, 1949, against the defendant.

The court concluded that the clause in question does not restrict the sale of the residue of lot 2, and rendered a decree requiring the defendant to pay the stipulated price and accept the proffered deed. The defendant appealed, assigning errors.

*James L. DeLaney for plaintiffs, appellees.*
*Charles Truett Myers for defendant, appellant.*

ERVIN, J. These principles are well settled in this jurisdiction:

1. "Where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions on its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee, either on the

theory that there is a mutuality of covenant and consideration, or on the ground that mutual negative equitable easements are created." 26 C.J.S., Deeds, section 167; *Higdon v. Jaffa,* 231 N.C. 243, 56 S.E. 2d 661; *Brenizer v. Stephens,* 220 N.C. 395, 17 S.E. 2d 471; *Bailey v. Jackson,* 191 N.C. 61, 131 S.E. 567; *Homes Co. v. Falls,* 184 N.C. 426, 115 S.E. 184.

2. The right to enforce the restrictions in such case is not confined to immediate purchasers from the original grantor. It may be exercised by subsequent owners who acquire lots in the subdivision covered by the general plan through *mesne* conveyances from such immediate purchasers. *Higdon v. Jaffa, supra.*

3. The restrictions limiting the use of land in the subdivision embraced by the general plan can be enforced against a subsequent purchaser who takes title to the land with notice of the restrictions. *Higdon v. Jaffa, supra; Davis v. Robinson,* 189 N.C. 589, 127 S.E. 697.

4. A purchaser of land in a subdivision is chargeable in law with notice of restrictions limiting the use of the land adopted as a part of a general plan for the development or improvement of the subdivision if such restrictions are contained in any recorded deed or other instrument in his line of title, even though they do not appear in his immediate deed. *Higdon v. Jaffa, supra; Sheets v. Dillon,* 221 N.C. 426, 20 S.E. 2d 344; *Turner v. Glenn,* 220 N.C. 620, 18 S.E. 2d 197; *Bailey v. Jackson, supra.*

This being true, the present appeal presents this solitary question: Was the clause providing that "no subdivision of any part of the above described property (*i.e.,* lot 2 of Block 40 of Myers Park) by sale, or otherwise, shall be made so as to result in a plot having an area of less than half an acre" inserted in the deed from the Stephens Company to the Thies-Smith Realty Company as a part of a general plan that the lots in Block 40 of Myers Park should not be smaller in size than half an acre?

The primary test of the existence of a general plan for the development or improvement of a tract of land divided into a number of lots is whether substantially common restrictions apply to all lots of like character or similarly situated. *Phillips v. Wearn,* 226 N.C. 290, 37 S.E. 2d 895; *Humphrey v. Beall,* 215 N.C. 15, 200 S.E. 918; 14 Am. Jur., Covenants, Conditions, and Restrictions, section 202; 26 C.J.S., Deeds, section 167.

When proper heed is paid to all pertinent facts shown in the record, it is plain that Block 40 of Myers Park is in fact, and was designed to be, a single subdivision of twenty-one lots. Eleven of the lots were conveyed by the Stephens Company to various purchasers by deeds which embody the clause in controversy, and the remainder of them were transferred by the Stephens Company to sundry other purchasers by deeds

which do not contain such clause or any comparable provision. In consequence, the substantial uniformity in restrictions essential to the existence of a general plan as to the size of lots in the subdivision does not exist, and the question posed by the appeal must be answered in the negative. *Stephens Company v. Binder,* 198 N.C. 295, 151 S.E. 639.

The validity of this conclusion is not impaired in any degree by the assumption that the maps indicate that each of the twenty-one lots in Block 40 of Myers Park was originally at least half an acre in area. A covenant that the lots in a subdivision shall not be changed in size cannot be implied from the mere circumstance that such lots are sold by reference to a recorded map. *Turner v. Glenn, supra; Stephens Company v. Binder, supra.*

For the reasons given, the judgment is
Affirmed.

JOHNSON, J., took no part in the consideration or decision of this case.