PeaRsok, C. J.
 

 Benjamin Edwards and James Edwards being tenants in common of a mill, Benjamin, for valuable consideration, conveyed his moiety to James, in fee. The deed is executed by both, and contains this clause: “And the said James doth for himself and his heirs covenant and agree to and with the said Benjamin and his heirs, that he, the said Benjamin, and his family, shall and may have the privilege of grinding, sawing and picking cotton at the mill, toll-free, for his family use; and farther, that if Benjamin shall, at any time hereafter, settle either one of his sons at the bridge place, that such one of his sons as may be there settled, shall have and enjoy the privilege of grinding, sawing and picking cotton for himself and his family, free from toll, but this privilege is intended to extend no further than to such son, during his life, and for his own family use.”
 

 The right of action is put on the ground that the legal effect of this clause is
 
 a grant of the easement
 
 or privilege of grinding, toll-free, and not a
 
 covenant,
 
 whether merely personal or one running with the land.
 

 The words are strictly those of covenant, and a construction converting them into a grant, can only he justified if sup
 
 *189
 
 ported by some direct authority, or very clearly, by “the reason of the tiling.”
 

 "We have examined the cases cited on the- argument, and do not consider any of them “ in point.” Besides the words “covenant and agree,” the word “grant,” or some synonymous term, is used in all the instruments which are construed to be grants, and in respect to leases for years, it may he remarked, that “an agreement to lease,” and a “lease,” differ very slightly, not only in the terms necessary to make them, but in legal effect, for a lease is a contract to permit one to occupy and take the profits of land for some stated time, and is perfected by entry; whereas, a
 
 covenant
 
 to permit one to grind at a mill, toll-free, and a
 
 grant
 
 of such an easement, differ very widely, both in legal effect and in respect to the persons and things to which it may extend.
 

 The “reason of the thing,” so far from supporting the construction contended for, as it seems to us, tends the other way ; at all events, it does not preponderate so decidedly as to overcome the difficulty of converting mere wmrds of covenant into a grant.
 

 The rule “
 
 ut res magis valeat quam pereat
 
 ” has no application. If an instrument cannot operate in the mode which, from its terms, the parties seem to have intended, under this rule, effect is given to it by allowing it to operate in some other mode; for instance, if a deed uses terms of “release only,” and the relation of the parties does not admit of its operation as a release, effect will be given to it, as a deed of “ bargain and sale,” provided it express a valuable consideration which will create a use, and sets ont the quantity of estate intended to be conveyed, together with a description of the premises. In our case, the deed wdll not perish, but will
 
 avail
 
 in the mode which, from its terms, the parties seem to have intended, i. e., a covenant.
 

 The argument that to treat it as a grant will be most beneficial to the vendor, “cuts both ways,” for of course it wmuld be less so to the vendee; and would fetter his estate as a clog upon alienation. The parties were brothers, and while the pri
 
 *190
 
 vilege was to be exercised by members of the family, and amicable relations were kept up, it might do, but in the hands of a stranger, it would be impracticable. The idea that a stranger is to have a right to go to another man’s mill, and use his machinery for grinding, sawing or picking cotton, is out of the question. Ho sensible man could be induced to buy on such terms. The argument is against the plaintiff in another aspect — that of public policy — as is said by Lord Beougham, in
 
 Keppel
 
 v. Bailey, 2 Mylne & Keene 577. “ It must not be supposed that incidents of a novel kind can be devised and attached to property at the fancy or caprice of any owner. It is clearly inconvenient to the science of the law and the public weal that such a latitude should be given. There can be no harm in allowing men the fullest latitude in binding themselves and their representatives, that is, their assets, real and personal, to answer in damages for breach of their obligations. This tends to no detriment and is a reasonable liberty to bestow; but great detriment would arise, and much confusion of rights, if parties were allowed to invent new modes of holding and enjoying real property, and to impress upon their lands a peculiar character which should follow them into all hands, however remote.” ■
 

 The remaining argument, which is the one most relied on, drawn from the covenant as to ponding back the water, and which, it is contended, must be allowed to operate as a grant of the easement, is alike inconclusive. The clause is as follows: “And it is hereby covenanted and agreed by and between the said parties, that the said James, his heirs, and assigns, shall, at no time hereafter, be liable to any action or demand for damages which may arise from the overflowing of any part of the lands of the said Benjamin, which are not contained in this indenture, which may be occasioned by the erection or raising of the mill-dam of the said mill.” In respect to the easement of overflowing the land as the mill-pond then was and had been used, it was implied as an incident of the grant of the mill, and the covenant was superfluous. In respect to the supposed right to make the dam higher,
 
 *191
 
 and overflow more land,
 
 ad
 
 libitum, two questions of doubtful construction are presented: "Was it the intention to confer any such right? If so, was a covenant relied on to secure its enjoyment, or was a grant intended? One matter of doubtful construction can derive but little aid from another. The analogy, however, fails, in several respects. In the covenant as to overflowing the land, the word “assigns” is used, and it is likewise used in each of the three covenants, at the conclusion of the deed, i. e., of seisin, of quiet enjoyment, and for further assurance; but it is omitted in the covenant under consideration. It may be that the word has no legal effect upon the covenants where it is used, but it sometimes has a very important effect. See notes to SphbtoeR’s case, 1 Smith’s leading cases
 
 'IS,
 
 and the omission of it in one covenant shows that the parties considered it, or intended it, to be of a different nature from the covenants in which it is used.
 

 The right to overflow more land, may have been considered necessary to the full enjoyment of the mill, and being connected with the property, ought to be of like duration in time; but the privilege of grinding, &c., toll-free, is a thing collateral, or constituted merely a part of the price; for, by reason of it, the vendor was able to take less for the mill; and being collateral, full compensation can be made in damages. This view is much strengthened by the fact that the privilege, in respect to the son, is expressly for life only, and is impliedly so in respect to the vendor, being restricted to the use of
 
 Ms family.
 

 ’Upon the whole, there is nothing to convince us that the parties intended to do more than the terms used import, i. e., the one to make, and the other to accept a covenant, for the purpose of securing the enjoyment of the limited privilege stipulated for; and we are unwilling, by a strained construction, to produce a consequence
 
 “
 
 inconvenient to the science of the law and the public weal.”
 

 There is error; judgment reversed, and
 
 venwe de novo. As
 
 the facts were not contested, it is to be regretted that the case was not put in a shape for final judgment.
 

 Pee Cueiam, Judgment reversed.