## HARVEY JEWELL *vs.* JAMES LEE, JR.[*]

The owner of land lying on both sides of a street granted the portion on one side, which bordered upon the ocean, subject to the condition that the same should only be used for bathing and boating from the beach, and that only low bathing-houses should be built thereon. It did not appear that he then intended that the land so granted should be subsequently divided and held by different owners. This, however, was done, and the deeds of conveyance were made subject to the condition. The purchaser of one end of the land also purchased from a stranger a lot opposite thereto, on the other side of the street. *Held,* that such purchaser could not maintain a bill in equity against the purchaser of another portion of the land, to restrain the latter from violating the condition.

BILL IN EQUITY filed March 1st, 1866, to restrain the defendant from erecting a dwelling-house upon a lot of land upon the southerly side of Orient Street in Swampscott, and to obtain a decree ordering him to remove all erections and structures of any kind which might be found to be in violation of the condition of a certain deed, as hereinafter set forth.

Upon the pleadings and report of *Chapman,* J., the case appeared to be as follows:

On the 15th of May 1856, John D. Bates, being the owner of land lying on both sides of Orient Street, conveyed to Stephen H. Wardwell and Eben N. Wardwell the portion upon the southerly side, bordering upon the ocean, " upon condition that the granted premises shall be used for no other purpose or purposes than those for which they are now used, namely, for bathing and boating from the beach, excepting only that low bathing-houses may be built thereon ; it being understood and agreed that the grantee, his heirs or assigns, may ornament the granted premises in such manner as shall not be inconsistent with the foregoing condition." On the 1st of May 1863,

---

[*] This case was from Essex County.

Stephen H. Wardwell released his interest in the premises to Eben N. Wardwell; and on the 29th of September 1865 the latter conveyed a portion thereof, being the westerly end, to the plaintiff, subject to the condition expressed in the deed from Bates. On the 23d of January 1866 Wardwell conveyed to Gorham Gray a lot next easterly of the lot conveyed to the plaintiff, subject to the same condition. And on the 5th of March 1866 Gray conveyed the last mentioned lot to the defendant, by deed of quitclaim.

On the 15th of May 1856 John D. Bates also by another deed conveyed to the two Wardwells a parcel of land lying on the north side of Orient Street, opposite to that conveyed by him to them on the same day, as mentioned above. On the 1st of May 1863, Stephen H. Wardwell released his interest therein to Eben N. Wardwell. On the 23d of January 1866 Eben N. Wardwell conveyed a portion thereof, being the westerly end, to Gorham Gray. And on the 5th of March 1866 Gray conveyed said lot to the defendant.

By deeds dated November 22d 1864 and January 5th 1866, the plaintiff acquired a title to another lot, with a dwelling-house thereon, upon the northerly side of the street, and lying next westerly of the lot conveyed to the defendant, as mentioned above.

The general situation of these various lots, in respect to each other, is shown by the following plan, in which no attempt is made to preserve the shape and relative dimensions of the lots.

Jewell *v*. Lee.

John D. Bates died in 1856 or 1857, leaving a son, of the same name, as his sole heir, residuary devisee, and executor of his will.

At the time of Wardwell's deed to the plaintiff, the latter agreed to aid Wardwell in an endeavor to induce Bates to release the condition; but it was with the understanding that no buildings were to be erected on the land subject to the condition.

In February 1866, Gorham Gray owned a house which stood on a lot belonging to him, on the north side of Orient Street, and had begun to move it to another lot on the same side. On the 22d of February the defendant agreed to purchase the house, and also the lot subsequently conveyed to him on the south side of the street, and made arrangements to place the house thereon. He knew of the condition in the deed to the Wardwells, and endeavored to procure a release of it from Bates, who gave him some encouragement that he would release it, and permit him to place the building on the land; but he did not give him any release or license to place the building thereon. On the 28th of February the plaintiff was informed that the defendant was moving the house, and on the same day gave

notice to the defendant of his objections thereto, and on the following day filed this bill in equity.

On the 5th of March 1866 the defendant procured from Bates, and shortly afterwards caused to be recorded, instruments releasing all the owners of the land upon the south side of the street, and from the condition in the deed to the Wardwells, for which the defendant paid $2000, a portion of which Eben N Wardwell is under some obligation by verbal promise to repay. The release to the plaintiff was never delivered to him. The release of the condition is of considerable pecuniary value to the defendant and Wardwell. The restriction was valuable to the plaintiff, independently of his lot on the north side of the street; but still more valuable in connection with that lot.

The case was reserved for the determination of the whole court.

*H. W. Paine & W. Gaston,* for the plaintiff. The condition was valid. *Parker* v. *Nightingale,* 6 Allen, 341. *Whitney* v. *Union Railway,* 11 Gray, 359. *Gray* v. *Blanchard,* 8 Pick. 283 *Clark* v. *Martin,* 49 Penn. State R. 289. This condition was inserted for the benefit of those who might thereafter own the estate, and not for the benefit of any other estate owned by Bates. The estate was subject to subdivision, and the grantor knew it. Each owner of a portion of the beach subject to the condition has a right to insist that each and every part shall remain subject thereto, and no acts of one or all of the others can deprive him of this right, and no change in the condition can be made without the assent of all. If the original grantor had himself subdivided the land, and sold it in separate lots to different persons, with a similar condition in each deed, the present case would be exactly within the decision in *Parker* v. *Nightingale.* Can the case be made different by the fact that his grantees subdivided the land, and sold it in separate parcels subject to the same condition? Is not the plaintiff's equity rather made stronger by the fact that he is now owner of a part of the original whole covered by the condition, as against the defendant, who is an owner of another part of the same whole?

The releases procured since filing the bill cannot affect the

plaintiff's rights. They do not relieve him from the danger of forfeiture of his estate; he has been no party to their procurement, and has not assented to them.

*C. B. Goodrich & J. C. Ropes*, for the defendant.

BIGELOW, C. J. The main ground on which the plaintiff rests his claim to equitable relief is, that the condition annexed by the original owner and grantor to his grant of the entire tract of land, of which the plaintiff and defendant now by mesne conveyances severally hold distinct parcels, constitutes a perpetual restriction on the use of the part now owned by the defendant, in the nature of a servitude or easement, on the observance of which the plaintiff, as the owner of the other part of the original parcel, has a right to insist.

It is doubtless true that such may be the effect of a condition in a class of cases where it is apparent that the condition was annexed to a grant for the purpose of improving or rendering more beneficial and advantageous the occupation of the estate granted, when it should become divided into separate parcels and be owned by different individuals, or when the manifest object of a restriction on the use of an estate was to benefit another tract adjoining to or in the vicinity of the land on which the restriction is imposed. But, in the absence of any fact or circumstance to show such purpose or object, a condition annexed to a grant can have no effect or operation either at law or in equity beyond that which attaches to it by the rules of the common law. The benefit of the condition would in such cases enure only to the grantor and his heirs or devisees, and the burden of it would rest on the estate to which it was annexed, and on those who held it or any part of it subject to the condition. Indeed, no restriction on the use of land and no condition annexed to its possession and enjoyment can be for the benefit of the grantee or those holding his estate in the granted premises, unless it be as a consideration of some restriction on other land, which may operate as an advantage or convenience in the use and occupation of the granted premises. Inasmuch as a grantee can restrict the use of land of which he is the owner according to his own will and pleasure, it is clear that he can derive no

benefit from a restriction or condition as such imposed on its use or enjoyment by any prior grantor.

There is nothing in the case before us which in any degree tends to show that there was any intent on the part of the grantor and grantee in the original deed by which the condition was annexed to that grant of the land now owned by the parties to this suit, to give any other or different effect to the condition than that which would result from it at common law. It does not appear that the original grantor had in contemplation the division of the land into separate lots or parcels which would be held by different owners, or that the condition was inserted in the grant for the purpose of creating a restriction on the use of the land as between subsequent grantees of different lots or parcels thereof. And this constitutes the precise distinction between the case at bar and that of *Parker* v. *Nightingale*, 6 Allen, 341, on which the plaintiff mainly relies in support of his case. There it was made to appear that a condition annexed to a grant of an estate was imposed in order to render the occupation of adjacent estates more convenient and advantageous, and that the existence of such condition entered into and formed part of the consideration of the grant of estates which were intended to be benefited thereby. See also *Badger* v. *Boardman*, 16 Gray, . So far as we are able to see, there is nothing to indicate that the original grantor of the premises, in annexing the condition, had any intent to regulate or control the possession or enjoyment of the premises for the benefit of subsequent owners or grantees of the estate, or any part of it, but that it was imposed by him solely for his own private and personal benefit, as the owner of other lots in the vicinity, in which the present plaintiff has no interest whatever.

To the other ground on which the plaintiff asks for equitable relief, we think there are two sufficient answers. In the first place, it is shown that the devisee and sole heir at law of the grantor in whom the possibility of reverter is vested had done acts which operated as a temporary waiver of the forfeiture of the condition by reason of placing the building on the premises by the defendant. Certainly the encouragement which

was held out to the latter, that the former would release the condition on the faith of which expense and trouble were incurred, was sufficient ground for equitable relief against forfeiture in favor of the plaintiff in case an attempt had been made to enforce it. It is not shown however that at the time of the filing of the bill any such forfeiture was contemplated or threatened. In the next place, the subsequent release of the condition by the devisee and heir at law of the grantor operates to take away all claim which the plaintiff might otherwise have had to relief. *Bill dismissed*